Timber Structures, Inc., a Corporation, Plaintiff-Appellant, v. Chateau Royale Corporation, a Corporation, Apollo Savings & Loan Association, a Corporation et al., Defendants-Appellees.

Gen. No. 49,248.

First District, Third Division.

June 11, 1964.

Philip R. Toomin, of Chicago, for appellant.

Richard Altieri, of Chicago, for Chateau Royale Corporation, appellee. Fischel, Kahn, Heart & Weinberg, of Chicago (Norman A. Shubert, of counsel), for Apollo Savings and Loan Association, appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order granting motions for summary judgment made by the defendants Apollo Savings & Loan Association (Apollo) and Chateau Royale Corporation (Chateau Royale) in a mechanic's lien foreclosure suit.

Plaintiff is a subcontractor who supplied the materials to be used in the construction of an addition to a commercial building in Chicago owned by Chateau Royale and financed by Apollo, as the mortgagee. Apollo disbursed the construction loan. Before this suit was instituted, Ralph Scafuri & Co., Inc. (Scafuri), the general contractor, executed a general release of all its interest in the property and is not a party to this appeal.

The principal issues involve the authority of an agent of plaintiff to execute a waiver of lien upon which Apollo made payment to the general contractor, and whether Apollo and Chateau Royale are estopped from making this defense.

344

On December 28, 1959, Apollo made the loan in question to Chateau Royale for the construction of an addition to a building at 5743 West Chicago Avenue, Chicago. Chateau Royale engaged Scafuri as general contractor, and he contracted with plaintiff for the manufacture and installation of wooden trusses for the building. Plaintiff's headquarters are in Portland, Oregon. Its agent in Chicago is Robert P. Dorman, described as Central Division Manager, with offices in Schiller Park, Illinois. On March 24, 1960, Apollo received a verification in writing, signed by Dorman, of plaintiff's contract with Scafuri. Plaintiff's home office was aware that Dorman had delivered the verification to Apollo, as indicated by a letter dated April 11, 1960, from plaintiff's home office to Apollo, in which the verification is referred to. The letter also asked for confirmation of the fact that "you [Apollo] will be paying directly to subcontractors by means of regular payout orders." In response to plaintiff's request, Apollo on April 14, 1960, said that it "will remit our check to your corporation after the installation of the trusses and upon receipt of proper payout requisition and waiver of lien."

Plaintiff completed its work on August 31, 1960, but did not present its mechanic's lien waiver to Apollo directly for payment. Instead, on or about September 7, 1960, Dorman accepted payment from Scafuri by the latter's uncertified check, and Dorman on behalf of plaintiff thereupon delivered to Scafuri a full waiver of mechanic's lien. This waiver bore the signature of Robert P. Dorman, Division Manager, Timber Structures, Inc., Central Division, *and recited that the plaintiff had received payment and waived any lien claim against the property.* Dorman did not present Scafuri's check for payment in Chicago, but on September 9, 1960, mailed it to plaintiff's home office in Oregon together with his memorandum of payment indicating

345

that the job had been paid for and a waiver of lien delivered. The check and accompanying memorandum of payment were received at plaintiff's Portland office on September 12, 1960.

Later, on or about September 14, 1960, Apollo received a payout order from Scafuri, signed by Adam N. Stillo, secretary of Chateau Royale, authorizing Apollo to pay $6,734 to Scafuri. That amount apparently represented payment for work done by plaintiff, as well as some work done by Scafuri, because Scafuri presented his own waiver of lien, as well as the waiver of lien signed by Dorman. Apollo's construction loan manager, Philip J. Koop, verified the installation of the wooden trusses, compared the signatures on the lien waivers and affidavits with the signature cards on file with Apollo, and on September 15, 1960, paid Scafuri the full amount.

On September 21, 1960, two weeks after plaintiff delivered its alleged waiver of lien, and six days after Apollo's payout based thereon, plaintiff, by Joseph L. Heinz, its secretary, advised Apollo by telephone that Scafuri's check had been returned marked "Insufficient Funds," and also advised Apollo that plaintiff's waiver of lien had been delivered to the general contractor upon condition that the check would be honored. Koop advised Heinz that Apollo had already made payment to the general contractor based on plaintiff's lien waiver and informed Heinz not to worry, that Apollo would take care of the matter; that there was approximately $150,000 left of a $300,000 mortgage, and that there would be no problem in making the check good. The following day the conversation was confirmed by Apollo's letter to plaintiff, stating that Scafuri had been contacted and had told Koop to tell plaintiff funds were available in his account and that plaintiff should redeposit the check. Koop added a provision that "[i]f, for any reason, this is not ac-

ceptable or the information given to us is false, please notify the undersigned as soon as possible." The check was redeposited by plaintiff on September 28th and came back marked "Insufficient Funds," on October 4, 1960.

In the meantime, Chateau Royale was becoming disillusioned with Scafuri as its general contractor. It (Chateau Royale) had booked parties, expecting Scafuri to finish the work during September, but they had to be cancelled because of delay. During the week of September 20th, the City of Chicago stopped the work for three reasons: prestressed, instead of precast, concrete had been used in the building, no driveway permit had been obtained, and certain plans covering electrical and plumbing work had not been filed with the city. The NSF check to the plaintiff followed, and Chateau Royale deciding to terminate its relations with Scafuri, obtained a general release of his interest in the construction fund on October 1, 1960, and engaged a new general contractor, one Sanders. A payout order dated September 24, 1960, bearing Sanders' name as a general contractor, was received by Apollo and paid September 30, 1960. Ralph Scafuri was not on the job after September 24th. Chateau Royale, through Stillo, was in touch with Heinz, but did not advise him that Scafuri's discharge was imminent or that the work had been stopped. Stillo told Heinz he would present the story of the NSF check to the owner, and he asked Heinz to call back in a week. On October 5, 1960, plaintiff learned of Scafuri's discharge through a telephone call from Sanders.

On July 12, 1961 plaintiff filed suit, asking, among other things, for a foreclosure of its mechanic's lien. After various pleadings, interrogatories and requests for admission, the important portions of which have been summarized, Apollo and Chateau Royale filed motions for summary judgment and presented affi-

davits of Philip J. Koop and Adam N. Stillo in support thereof. In opposition, plaintiff filed the affidavits of Joseph L. Heinz, its secretary, and Philip R. Toomin, its attorney. Toomin's affidavit said he had taken depositions of Stillo, Koop and Sanders, and that he was setting forth pertinent parts thereof which had not been previously presented. The trial court granted the motions for summary judgment on the mechanic's lien foreclosure count and found there was no just reason for delaying enforcement or appeal. Ill Rev Stats c 110, § 50(2) (1963).

As this appeal is from an order of the trial court granting Apollo's and Chateau Royale's motions for summary judgment, we must determine whether from pleadings, depositions and admissions on file, together with the affidavits, there is any genuine issue of material fact presented. Ill Rev Stats c 110, § 57(3) (1963). The questions to which this principle should be applied are the following: Was Apollo under an obligation to pay plaintiff directly because of the April 11th and 14th correspondence? Did Dorman have authority to grant mechanic's lien waivers? Was there a valid waiver of mechanic's lien? Were Apollo and Chateau Royale under obligation to inquire into the circumstances surrounding the construction work at the time of the payout? Were Apollo and Chateau Royale estopped from asserting the waiver of mechanic's lien as a defense? Apollo and Chateau Royale argue that the mechanic's lien waiver by Dorman is a complete defense.

We will first consider Apollo's letter of April 14th, which plaintiff contends obligated Apollo to pay the plaintiff directly. There is no doubt that at the commencement of the transaction direct payment was contemplated, but neither is there any doubt that by later consent of both parties, a deviation from that procedure was made. Plaintiff completed the work on

August 31, 1960. Through Dorman as its agent it accepted payment from Scafuri by his uncertified check on or about September 7th and gave him its waiver of lien, with a statement that it had been paid in full. If Dorman was uncertain about Scafuri's financial stability, he could have presented plaintiff's waiver of lien at the same time that Scafuri presented the payout requisition and his own waiver of lien.

Moreover, if we were to assume that Dorman had no such authority, plaintiff's home office acquiesced in this form of payment. Scafuri's check was not presented for payment in Chicago, but was mailed by Dorman to plaintiff's home office in Oregon on September 9, 1960, together with a memorandum of payment. This was received in Portland on September 12th. It was not until September 14th that Scafuri presented to Apollo the payout requisition, his waiver of lien and plaintiff's waiver of lien. If plaintiff had determined to stand on its right to be paid by Apollo directly, as it now contends, it should have notified Apollo immediately that the payment by Scafuri to its agent Dorman was a mistake, and demanded that Apollo pay it directly. Instead, plaintiff on or about September 13th deposited the check and it was returned NSF on September 21st. This in itself was a ratification of Dorman's action, even if his position as plaintiff's Central Division Manager did not embrace authority to execute the waiver.

We will now, however, consider whether Dorman had such authority. Plaintiff argues that Dorman was not an officer of the plaintiff company, nor was he expressly or impliedly authorized to execute or deliver the purported waiver of lien in plaintiff's name. While the number of instances in which Dorman had executed and delivered waivers of lien and the amounts involved are not revealed, plaintiff in its answer to Apollo's interrogatories admitted that Dor-

349

man had executed waivers of mechanic's liens during the six months preceding September 7, 1960, without prior express authority to do so from his superiors at Portland. It also admitted that at no time during the same period had Dorman's superiors advised him or those dealing with him as its Central Division Manager in Chicago that he was not authorized to execute waivers on plaintiff's behalf. With respect to Dorman's prior dealings with Apollo, Apollo on March 24, 1960, had received a written verification of plaintiff's contract, sent from its office in Schiller Park, Illinois, and signed by Robert P. Dorman, as Central Division Manager.

The general rule is stated in Restatement (Second) Agency, §§ 27 and 8B (1958) as follows:

> § 27—". . . apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

> § 8B(1) "A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if . . . .
>
> "(b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts. . . .
>
> "(3) Change of position, as the phrase is used in the restatement of this subject, indicates payment of money. . . ."

Plaintiff, by acquiescing in Dorman's lien waivers, held him out as one who had the apparent authority to waive mechanics' liens for it. Apollo had a right to rely on Dorman's authority after receiving verification of plaintiff's contract with Scafuri from Dorman, as plaintiff's Central Division Manager.

Plaintiff is estopped from denying Dorman's authority because Apollo obviously relied on his representation concerning the waiver of mechanic's lien and receipt of full payment from Scafuri. Plaintiff argues that nowhere in the pleadings or depositions does Apollo say it relied on Dorman's apparent authority, Koop's affidavit merely stating that payment was made in consideration of the delivery of waivers by Scafuri and plaintiff and of the payout order signed by the equity owner. While an express allegation of reliance is not made, there can be no doubt that it was implicit in the very nature of the transaction.

Plaintiff argues that the waiver of lien executed by Dorman is inadequate because a mechanic's lien is an interest in property which cannot properly be conveyed by a corporation, except in an instrument under seal, signed by a proper corporate officer. Plaintiff cites Roth v. Lehman, 1 Ill App2d 94, 116 NE2d 413, where we said (at p 98) that a mechanic's lien "is a claim which, without the express consent of the owner of property, becomes a lien, that is to say, a mortgage on the property without those formal requirements of writing, signature, acknowledgment and recording essential to a mortgage or trust deed." The only question presented in the Roth case was whether a subcontractor may, by testimony relating to oral conversations which were contradicted by other witnesses, make a claim for work and material beyond that set forth in the notice he had given at the time he started work on his subcontract. This

court in denying the subcontractor's claim pointed out that the Mechanic's Lien Act gave the secured party all the advantages of a mortgage, and that a change or extension of the work to be done should not be allowed without written notice thereof. That case has no bearing on the issue before us. The other cases cited on this point are also irrelevant.

■ Plaintiff argues, lastly, that genuine issues of material fact exist concerning the obligation of Apollo and Chateau Royale to inquire into the circumstances surrounding the construction work at the time of payment, and that they are estopped by their actions after payment from asserting plaintiff's waiver of lien as a defense. The only evidence in the record that indicates Apollo knew anything about the contractor's difficulties before the September 24, 1960 payment which bore Sanders' name as general contractor, was the telephone call from Heinz, secretary of plaintiff, to Koop, Apollo's construction loan manager, about the NSF check. Even if Apollo was aware of the difficulties, it had a right to rely on the regular waiver of lien presented by plaintiff. As we have hereinbefore said, plaintiff could have avoided payment to Scafuri by presenting its claim and waiver of lien to Apollo directly, but it chose not to do so. Apollo was not plaintiff's agent on the premises to supervise construction or to inquire into the financial stability of the contractor. Plaintiff had Dorman as its central division manager, and he could have inquired into such matters on plaintiff's behalf.

Nor do we believe that Koop's advice to Heinz, "not to worry . . . that there would be no problem in making the check good," raises an estoppel against Apollo. The fair import of that conversation and the subsequent letter to Heinz is that there was adequate money in the construction loan fund and that, to the best of Apollo's knowledge, Scafuri had sufficient money to pay the check. It cannot be said that plaintiff was

lulled into a false sense of security by that information, but if it was, the fault lies not with Apollo, but with plaintiff who, when it received notice of the NSF check, should have started procedure against Scafuri as well as made inquiry of Apollo and Chateau Royale.

Chateau Royale cannot be estopped from asserting the mechanic's lien waiver of plaintiff because of its knowledge at the time of the payout requisition or because of its subsequent actions. All Chateau Royale did was approve the payout requisition at the time of plaintiff's completion of its portion of the work. There is nothing in the pleadings or in the affidavit to show that at the time of the September 14, 1960 payout there was any question about Scafuri's solvency, although there was dissatisfaction with his work. Chateau Royale was as much in the dark as was Apollo until it received word from Heinz, plaintiff's secretary, of the NSF check. To contradict the last statement, plaintiff would have us examine Zemel v. Chateau Royale Corp., 35 Ill App2d 313, 182 NE2d 383, and accept the facts therein stated. The parties are not identical with the parties in the instant case, nor is there anything in the record here to corroborate the facts therein stated.

Plaintiff argues that Stillo, secretary of Chateau Royale, did not disclose to Heinz the imminency of Scafuri's discharge as general contractor. The waiver of lien was within Dorman's authority, as we have held, and Chateau Royale had arranged with Apollo to disburse the loan fund. Plaintiff's relationship was with Scafuri, the general contractor, and it had Dorman in the area to look after its affairs.

The pertinent facts are not in dispute, and the law supports the trial court's judgment.

Judgment affirmed.

DEMPSEY and SULLIVAN, JJ., concur.